UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Brent R.,[1]

                Plaintiff,                     Case No.  25-cv-1563 (KMM/LIB)

    v.                          **REPORT AND RECOMMENDATION**

Frank Bisignano,
Commissioner of Social Security Administration,

                Defendant.

Plaintiff, Brent R. (hereafter "Plaintiff"), seeks judicial review of the decision of the Commissioner of Social Security (hereafter "Defendant") denying his application for disability benefits. This matter is before the undersigned United States Magistrate Judge for disposition pursuant to 28 U.S.C. § 636 and Local Rules 7.2(a)(1). This Court has jurisdiction over the claims under 42 U.S.C. § 405(g).

Pursuant to the Federal Supplemental Rules of Civil Procedure which govern actions seeking judicial review of a decision of the Commissioner of Social Security, the present action "is presented for decision by the parties' briefs." Fed. R. Civ. P. Supp. SS Rule 5. Plaintiff filed a brief requesting reversal of the Commissioner's final decision and remand to the Social Security Administration for further administrative proceedings. [Docket No. 18]. Defendant filed a brief asking this Court to affirm the Commissioner's decision denying Plaintiff's request for disability benefits. [Docket No. 24].

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Thus, when the Court refers to Plaintiff by his name only his first name and last initial are provided.

For the reasons discussed herein, the undersigned recommends that Plaintiff's request for relief, [Docket No. 18], be **GRANTED**, and Defendant's request for relief, [Docket No. 24], be **DENIED**.

## I.  BACKGROUND

On January 14, 2020, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. (Tr. 52, 228).[2] In his application, Plaintiff alleged that his disability began on April 25, 2019. (Tr. 52, 228). The Commissioner initially denied Plaintiff's claims on April 21, 2020, and again, upon reconsideration, on July 27, 2020. (Tr. 52). On September 30, 2020, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 52). Administrative Law Judge Peter Beekman (hereafter "ALJ Beekman") conducted a telephonic hearing on September 14, 2021. (Tr. 52, 93–114). ALJ Beekman issued an unfavorable decision on September 27, 2021, citing, in support, a prior unfavorable ALJ decision which had been issued on April 29, 2019, four days after the claimant's alleged onset of disability, in applying "the principle of res judicata." (Tr. 52, 77–92).

Plaintiff appealed ALJ Beekman's unfavorable decision to the Appeals Council. (Tr. 52). On November 22, 2022, the Appeals Council vacated ALJ Beekman's decision and remanded the case to Administrative Law Judge Peter Kimball (hereafter "ALJ") to specifically address and adequately evaluate the opinion evidence of Dr. Martin and Mr. Dahl, MS, ATC.[3] (Tr. 52, 53).[4]

---

[2] Throughout this Report and Recommendation, the Court refers to the Administrative Record, [Docket No. 11], by the abbreviation "Tr." The Administrative Record is consecutively paginated across 107 exhibits. (See, Administrative Record [Docket No. 11]). Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of these exhibits.

[3] "ATC" refers to the Certified Athletic Trainer credential.

[4] In vacating ALJ Beekman's decision, the Appeals Council disagreed with ALJ Beekman's application of the principle of res judicata, stating "[w]hile the [ALJ] found the doctrine of res judicata applied, the law has changed since the last decision regarding opinion evidence. HALLEX I -5-3-30 was revised on August 25, 2021. Therefore, the doctrine of res judicata does not apply." (Tr. 53).

The ALJ conducted a telephonic hearing on October 26, 2023. (Tr. 53, 128–170). Plaintiff testified at the hearing, along with an independent vocational expert, Brian Womer, (hereafter "IVE Womer"), as well as Ms. Hollund, Plaintiff's friend and non-attorney representative. (Tr. 53, 138–169).

On March 8, 2024, the ALJ issued a decision denying Plaintiff's request for a period of disability and disability insurance benefits. (Tr. 52–68). The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 68).

Plaintiff thereafter sought review of the decision by the Appeals Council. (Tr. 14). Subsequently, on February 11, 2025, the Appeals Council denied Plaintiff's request for review. (Tr. 10–13). As a result, the ALJ's decision became the final decision of the Commissioner. See, 20 C.F.R. §§ 404.981, 416.1481.

On April 17, 2025, Plaintiff filed this action. (Compl. [Docket No. 1]). Thereafter, this matter was presented to the Court for review pursuant to the parties' briefs, [Docket Nos. 18, 24, 25], and the Court took the matter under advisement on the written submissions.

## II. STANDARDS OF REVIEW

### A. Administrative Law Judge's Five-Step Analysis

If a claimant's initial application for disability benefits is denied, he may request reconsideration of the decision. 20 C.F.R. §§ 404.907–404.909. A claimant who is dissatisfied with the reconsidered decision may then obtain administrative review by an administrative law judge ("ALJ"). 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis. This analysis requires the ALJ to make a series of factual findings about the claimant's impairments, residual functional capacity, age, education, and work

experience. See, 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). The Eighth Circuit has described this five-step process as follows:

> The Commissioner of Social Security [through the ALJ] must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

### B. Appeals Council Review

If the claimant is dissatisfied with the ALJ's decision, he may request review by the Appeals Council, although the Appeals Council need not grant that request for review. See, 20 C.F.R. §§ 404.967–404.982. The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal court within sixty days after notice of the Appeals Council's action. See, 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. In this case, the Appeals Council declined to review the ALJ's decision finding that Plaintiff was not disabled. (Tr. 1).

### C. Judicial Review

If a claimant remains dissatisfied with the final decision of the Commissioner following the resolution of claimant's request for review to the Appeals Council, the claimant may seek judicial review in federal court. Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps discussed above.

The claimant bears the burden under the Social Security Act of proving that they are disabled. See, 20 C.F.R. § 404.1512(a); Whitman v. Colvin, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated he cannot perform any of their prior, relevant work due to a

disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity ("RFC") to engage in some other substantial, gainful activity. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

Judicial review of the Commissioner's decision (through the ALJ) to deny disability benefits, however, is constrained to a determination of whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)); see, Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not alone prevent a particular finding from being supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the ALJ's finding merely because evidence exists in the administrative record to support a conclusion contrary to the Commissioner's findings. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the ALJ's decision, the Court must affirm the decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009). Thus, the Court will not reverse the ALJ's "denial of benefits so long as the [ALJ's] decision falls within the 'available zone of choice.'" Bradley, 528 F.3d at 1115.

The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Id.

## III. DECISIONS UNDER REVIEW

The ALJ made the following determinations during the five-step disability evaluation process.

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since April 25, 2019, the alleged onset date, to his date last insured of September 30, 2019. (Tr. 56). Plaintiff does not challenge this finding. The Court will refer to the time period between Plaintiff's alleged onset date to his date last insured as "the adjudicated period."

At step two, the ALJ concluded that Plaintiff had "the following severe impairments: history of right hip fracture, status-post fixation . . .; history of right knee fracture, status-post fixation . . .; and chronic pain syndrome[.]" (Tr. 56). Plaintiff does not challenge this finding.

At step three, the ALJ concluded that Plaintiff did not have any impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 60, 61). Specifically, the ALJ found that Plaintiff did not have any impairment or combination of impairments which met or medically equaled listings 1.17 for history of right knee and right hip fractures and 1.18 for right knee and right hip impairments. (Tr. 60, 61). Plaintiff does not challenge the ALJ's findings at step three.

At step four, the ALJ made the following RFC determination:

[C]laimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except standing and walking 2 hours in an 8-hour workday; no use of foot controls with the right lower extremity; able to climb ramps and stairs occasionally, kneel occasionally, crouch occasionally, crawl occasionally; no exposure to unprotected heights or moving mechanical parts; no concentrated exposure to extreme cold; and able to change position such that after 30 minutes of sitting, able to stand for 1 to 2 minutes.

(Tr. 61). Plaintiff challenges this RFC determination made by the ALJ. Plaintiff does not challenge the ALJ's credibility determination, but does challenge the RFC on the grounds that it is not supported by substantial evidence given the ALJ's alleged improper evaluation of Dr. Martin and Mr. Dahl's opinion evidence.[5] In making this RFC determination, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms;" however, the ALJ also concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." (Tr. 62).

At step five, based on his RFC determination and relying on the testimony from the independent vocational expert, IVE Womer, the ALJ determined that Plaintiff was capable of performing the requirements of such representative occupations as a small parts assembler, with approximately 18,000 jobs in the national economy; as a merchandise maker, with approximately 136,000 jobs in the national economy; or as an inspector and hand packager, with around 7,000 jobs in the national economy. (Tr. 67, 68).

Based on his findings at each step of the sequential analysis, the ALJ concluded that Plaintiff was not under a disability, as that term is defined by the Social Security Act, at any time during the adjudicated period. (Tr. 68).

---

[5] "Social Security Ruling 16-3p eliminates the use of the term 'credibility' and clarifies that the Commissioner's review of subjective assertions of the severity of symptoms is not an examination of a claimant's character, but rather, is an examination for the level of consistency between subjective assertions and the balance of the record as a whole." Noerper v. Saul, 964 F.3d 738, 745 n.3 (8th Cir. 2020). SSR 16-3p applies to the present case, "but it largely changes terminology rather than the substantive analysis to be applied," and in discussing said determination, Courts have continued to use the "credibility" terminology. Noerper, 964 F.3d at 745 n.3.

## IV. ANALYSIS

Plaintiff asserts one overarching argument in his appeal of the ALJ's decision: the ALJ failed to conduct a proper analysis of Mr. Dahl's and Dr. Martin's opinions considering the supportability and consistency factors as required under 20 C.F.R. § 404.1520c(c). (See gen., Mem. in Supp. [Docket No. 18]). In support of this argument, Plaintiff contends that the ALJ, in adopting the opinions of the non-examining state agency doctors and rejecting the restrictive limitations proposed by two examining providers, Mr. Dahl and Dr. Martin, the ALJ failed to properly consider the supportability and consistency of Mr. Dahl's and Dr. Martin's opinions. (Id.).

The Commissioner contends that the ALJ properly evaluated the supportability and consistency of Mr. Dahl's and Dr. Martin's opinions, and that the resulting decision is "legally sound and supported by substantial evidence." (See gen., Mem. in Opp. [Docket No. 24]).

The relevant regulations governing the weighing of opinion evidence were revised for claims filed on or after March 27, 2017. See, 20 C.F.R. § 404.1520c(a).  Because Plaintiff filed his initial application for disability benefits on January 14, 2020, the new regulations apply here. See, Id.

The new regulations eliminate the "treating physician" rule. Id.; see, Austin v. Kijakazi, 52 F.4th 723, 728 (8th Cir. 2022). Under the new regulations, the administrative law judge does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the administrative law judge evaluates the persuasiveness of all medical opinions in the record by considering the following five factors: (1)

supportability;[6] (2) consistency;[7] (3) relationship with the claimant; (4) specialized training of the medical source; and (5) other factors. 20 C.F.R. § 404.1520c(c).

The two most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2); Austin, 52 F.4th at 728. The ALJ is required to explain how these two factors were considered. 20 C.F.R. § 404.1520c(b)(2); Bonnett v. Kijakazi, 859 F. App'x 19, 20 (8th Cir. 2021). The ALJ may also, but is not required to, explain how the remaining factors were considered. See, 20 C.F.R. § 404.1520c(b)(2). However, where the ALJ "find[s] that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ "will articulate how [they] considered the other" enumerated factors "for those medical opinions or prior administrative medical findings[.]" 20 C.F.R. § 404.1520c(b)(3).

### A. The ALJ Erred in his Evaluation of Mr. Dahl's Opinion.

Mr. Dahl conducted his evaluation on October 2, 2019, where he personally examined Plaintiff. (Tr. 788). Through this examination, Mr. Dahl opined, in relevant part, that Plaintiff could lift ten to twenty pounds frequently and twenty to thirty pounds occasionally; could occasionally climb stairs; would have significant difficulty stooping; would not be able to kneel or crawl; would not be able to occasionally crouch; could only sit for two hours; could stand for only one hour; and could occasionally walk. (Tr. 788, 789).[8] Based on these findings and his professional opinion, Mr. Dahl concluded that:

---

[6] "Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 1520c(c)(1).

[7] "Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 1520c(c)(2).

[8] Throughout the ALJ's findings and related exhibits, Mr. Dahl's evaluation is referred to as a Functional Capacity Evaluation (hereafter "FCE").

9

> [Plaintiff] has very limited functional ability with regular working tasks and activities of daily living (ADL). This limited functional ability also comes with high levels of pain while performing the tasks and multiple hours afterwards too. I would not recommend any physical work for [Plaintiff] due to his extensive lack of [range of movement] and inability to perform physical tasks for more than 10–15 minutes at a time.

(Tr. 723).

In the present case, the ALJ found Mr. Dahl's opinion to be "somewhat persuasive." (Tr. 65). After summarizing Mr. Dahl's opinion, the ALJ's discussion of Mr. Dahl's opinion is as follows:

> [Mr. Dahl's] opinion is somewhat persuasive in terms of a light level of lifting, occasional standing/walking, [and] occasional climbing of stairs. However, I have not adopted a two hour sitting restriction, nor have I ruled out crawling, crouching, kneeling, and stooping based on the limited objective evidence to support these restrictions.

(Tr. 65). This is the entirety of the discussion of Mr. Dahl's opinion.

Because the ALJ did not find Mr. Dahl's opinion to be as equally well-supported as any other opinion about the same issue, the ALJ is required here to explain only how the supportability and consistency factors were considered. 20 C.F.R. § 404.1520c(b). On the record now before the Court, the ALJ failed to do so.

In discussing Mr. Dahl's, opinion, the ALJ did not explain whether Mr. Dahl's opinion was supported by Mr. Dahl's own treatment notes within his own opinion, or whether there was any objective medical evidence presented by Dr. Dahl himself,[9] nor did the ALJ cite to any contradictory evidence in the record. The Court acknowledges that an ALJ may properly discount the opinion of a treating provider that is conclusory or unsupported and contradicted by other evidence in the record. Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997); Ghant v. Bowen, 930

---

[9] While the ALJ did specify that he did not adopt "a two hour sitting restriction," nor did he rule out "crawling, crouching, kneeling, and stooping based on the limited objective evidence to support th[o]se restrictions," the ALJ failed to specify whether this lack of "objective evidence" related to a lack of objective evidence within the overall record or a lack of objective evidence within Mr. Dahl's opinion.

10

F.2d 633, 639 (8th Cir. 1991); Martise v. Astrue, 641 F.3d 909, 925 (8th Cir. 2011) ("An ALJ may justifiably discount a treating physician's opinion when that opinion is inconsistent with the physician's clinical treatment notes.") (quotation omitted); Grindley v. Kijakazi, 9 F.4th 622, 632 (8th Cir. 2021); Kraus v. Saul, 988 F.3d 1019, 1025 (8th Cir. 2021); see also Wildman v. Astrue, 596 F.3d 959, 967 (8th Cir. 2010) (alteration in original) (quoting Piepgras v. Chater, 76 F.3d 233, 236 (8th Cir. 1996)) ("Indeed, [a] treating physician's" or psychotherapist's "opinion deserves no greater respect than any other" medical "opinion when [it] consists of nothing more than vague, conclusory statements.").

However, the ALJ's failure to address specific evidence ultimately renders this Court "unable to determine whether any such rejection is based on substantial evidence." Jones v. Chater, 65 F.3d 102, 104 (8th Cir. 1995). While the ALJ may have properly evaluated Mr. Dahl's opinion, and disregarded his proposed limitations for proper reasons supported by the record as a whole, the ALJ did not include this discussion, leaving the Court to "speculate whether or why an ALJ rejected certain evidence," which the Court cannot do. Jones, 65 F.3d at 104.

Defendant does attempt to save the ALJ's decision by arguing that "the ALJ's decision as a whole shows the ALJ identified substantial evidence that supported his evaluation of Mr. Dahl's opinion." (Mem. in Opp. [Docket No. 24] at 8). In making this argument, however, Defendant improperly relies on a rationale which was not proffered by the ALJ in his discussion of Mr. Dahl's opinion.

Defendant may not demonstrate that the ALJ's evaluation of Mr. Dahl's opinion is supported by substantial evidence by relying on a rationale other than that proffered by the ALJ. The Court's review of the Social Security Administration's decision, through the administrative law judge, is limited to the consideration of "the agency's rationale for its decision, and if that rationale is inadequate or improper the court must reverse and remand for the agency to consider

11

whether to pursue a new rationale for its decision or perhaps to change its decision." <u>Shanda v. Colvin</u>, No. 14-cv-1838 (MJD/JSM), 2015 WL 4077511, at \*29 (D. Minn. July 6, 2015). The ALJ's decision cannot be sustained on the basis of the post-hoc rationalizations of appellate counsel. <u>See</u>, <u>Stacey S. v. Saul</u>, No. 18-cv-3358 (ADM/TNL), 2020 WL 2441430, at \*15 (D. Minn. Jan. 30, 2020), <u>report and recommendation adopted</u>, 2020 WL 1271163 (D. Minn. Mar. 17, 2020).

Hypothetically, it may be true that in reaching his decision on the persuasiveness of Mr. Dahl's opinion the ALJ undertook a rationalization similar to the post-hoc argument now proffered by Defendant, but the ALJ did not offer any such rationale in his decision. As such, the Court cannot assume any such rationale on appeal. <u>See</u>, <u>Stacey S.</u>, 2020 WL 2441430, at \*15. "It is not the role of this Court to speculate on the reasons that might have supported the ALJ's decision or supply a reasoned basis for that decision that the ALJ never gave." <u>Stacey S.</u>, 2020 WL 2441430, at \*15 (collecting cases); <u>see</u>, <u>Gerald L.</u>, 2022 WL 4472749, at \*25.

Even if, for the sake of argument, there is substantial evidence in the record to support the ALJ's conclusions, ". . .by regulation, the ALJ must still provide a sufficient explanation about how he came to those conclusions . . . . the question is not whether the record substantially supports the ALJ's decision; the issue is whether the ALJ legally erred by failing to follow his regulatory mandate under 20 C.F.R. § 416.920c[.]" <u>Kimm R. W. v. O'Malley</u>, No. 23-cv-2497 (JMB/DLM), 2024 WL 3896613, at \*7 (D. Minn. July 15, 2024), <u>report and recommendation adopted sub nom. Kimm W. v. O'Malley</u>, No. 23-cv-02497 (JMB/DLM), 2024 WL 3890913 (D. Minn. Aug. 21, 2024).

In sum, the ALJ failed to adequately explain why he found the limitations expressed in Mr. Dahl's opinion to be only somewhat persuasive.

**B.  The ALJ Erred in his Evaluations of Dr. Martin's March 7, 2017, and October 17, 2019, Opinions.**

Dr. Martin conducted evaluations of Plaintiff on March 7, 2017, and October 17, 2019. (Tr. 693, 746). Dr. Martin personally examined Plaintiff in connection with his March 7, 2017, opinion. (Tr. 746).

**1.  Dr. Martin's March 7, 2017, Opinion.**

Following the March 7, 2017, examination, Dr. Martin opined that:

In an 8 (eight) hour day the [Plaintiff] could work 4 (four) hours. This should be done from a sitting position and he should be allowed to change positions at least every 20–30 minutes. He should not have to ambulate except to and from the work site; and should not have to negotiate stairs or inclines except very rarely. He should not have to climb ropes or ladders. He should not have to walk on uneven surfaces. He should also not have to use his right lower extremity in repetitive foot control use.

He should limit his bending and lifting to no more than 40 (forty) pounds in[sic] this should be from waist height only. He should not have to do any crouching, stooping, crawling, or kneeling. Because of the metal he should not have to work in any cold environments. He should limit trunk twisting and pushing and pulling to occasional use only.

Due to the numbness in his right fingers he should not have to do any fine manipulating of objects with that hand.

(Tr. 748).

In the present case, the ALJ found Dr. Martin's March 7, 2017, medical opinion to be "partially persuasive." (Tr. 66). After summarizing Dr. Martin's March 7, 2017, opinion, the ALJ's discussion of Dr. Martin's opinion is as follows:

Limitations of working a seated job with change of position every 20–30 minutes is generally supported and adopted into the above residual functional capacity. Limited right leg foot controls, no climbing of ropes and ladders is also supported. Ramps and stairs should be limited, though "very rarely" is not defined by the author. No ambulation at all at the worksite is not fully consistent with the overall evidence, but limited stand/walking is generally supported at two hours of time on feet per eight hour workday. A 40 pound lifting appears to be more than what the functional capacity evaluation or other records support, so that has not been adopted. But no crouching, stooping, kneeling, or crawling is also not fully

13

supported considering the physical exam findings from this author. A need to avoid cold environments is supported. I do not find a physical impairment supports any manipulative restrictions. Overall, this opinion is partially persuasive.

(Tr. 66). This is the entirety of the discussion on Mr. Martin's March 7, 2017, opinion.

Because the ALJ did not find Dr. Martin's March 7, 2017, opinion to be as equally well-supported as any other opinion about the same issue, the ALJ is required here to explain only how the supportability and consistency factors were considered. 20 C.F.R. § 404.1520c(b). On the record now before the Court, the ALJ failed to do so.

In discussing Dr. Martin's March 7, 2017, opinion, the ALJ did not adequately explain whether Dr. Martin's opinion was supported by his own treatment notes within the March 7, 2017, opinion, and whether there was any objective medical evidence presented by Dr. Martin himself, nor did the ALJ cite to any contradictory evidence in the record. As discussed above, the Court acknowledges that an ALJ may properly discount the opinion of a treating provider that is conclusory or unsupported and contradicted by other evidence in the record. Rogers, 118 F.3d at 602; Ghant, 930 F.2d at 639; Martise, 641 F.3d at 925; Grindley, 9 F.4th at 632; Kraus, 988 F.3d at 1025; see also Wildman, 596 F.3d at 967 (quoting Piepgras, 76 F.3d at 236 (8th Cir. 1996)).

While the ALJ's discussion of Dr. Martin's March 7, 2017, opinion is entirely more substantial than the ALJ's discussion of Mr. Dahl's opinion, and does come close to a satisfactory analysis utilizing the supportability and consistency factors, as explained above, failure to address specific evidence renders this Court "unable to determine whether any such rejection is based on substantial evidence." Jones, 65 F.3d at 104. "while an ALJ's explanation need not be exhaustive, boilerplate or 'blanket statement[s]' will not do." Lucus v. Saul, 960 F.3d 1066, 1069 (8th Cir. 2020) (quoting Walker v. Comm'r, Soc. Sec. Admin., 911 F.3d 550, 554 (8th Cir. 2018) (citation omitted)).

Defendant, again, attempts to save the ALJ's decision arguing that "the ALJ's decision provides substantial evidence in support of the ALJ's evaluation of Dr. Martin's [March 7, 2017,] opinion[ ]." (Mem. in Opp. [Docket No. 24] at 12). In making this argument, however, Defendant improperly relies on a rationale which was not proffered by the ALJ in his discussion of Dr. Martin's March 7, 2017, opinion.

As discussed above, Defendant may not demonstrate that the ALJ's evaluation of Dr. Martin's March 7, 2017, opinion is supported by substantial evidence by relying on a rationale other than those proffered by the ALJ. This Court's review of the Commissioner's decision, through the ALJ, is limited to the grounds identified in the ALJ's decision. See, e.g., Bonnett, 859 F. App'x at 20; Shanda, 2015 WL 4077511, at *29.

Again, even if, solely for the sake of argument, there is substantial evidence in the record to support the ALJ's conclusions, ". . . by regulation, the ALJ must still provide a sufficient explanation about how he came to those conclusions . . . . the question is not whether the record substantially supports the ALJ's decision; the issue is whether the ALJ legally erred by failing to follow his regulatory mandate under 20 C.F.R. § 416.920c[.]" Kimm R., 2024 WL 3896613, at *7.

In sum, the ALJ failed to adequately explain why he found the limitations expressed in Dr. Martin's March 7, 2017, opinion, to be only partially persuasive.

### 2. Dr. Martin's October 17, 2019, Opinion.

On October 17, 2019, Dr. Martin authored Plaintiff's Return to Work Status Report. (Tr. 693). Dr. Martin wrote this specific Report after reviewing Mr. Dahl's FCE report, which Dr. Martin noted "shows that the patient is very debilitated from his past injuries. Work restrictions were written based on his FCE and they can be found in his chart." (Tr. 692).

Dr. Martin, then, in Plaintiff's Return to Work Status Report, opined that Plaintiff could return to work starting October 17, 2019, with the following limitations: (1) Plaintiff could sit for

15

two hours and stand for one hour per day; (2) Plaintiff could not walk in a normal work day; (3) Plaintiff could never bend, stoop, squat, crawl, crouch, kneel, or use his feet for repetitive motions; (4) Plaintiff could rarely climb heights, balance, push/pull, or twist; (5) Plaintiff could lift thirty pounds from the waist occasionally; (6) Plaintiff was limited to the "very light" physical capacity category; (7) Plaintiff could alternate tasks and change positions as needed; and (8) Plaintiff may work up to two hours a day, five days per week. (Tr. 66, 693).

In the present case, the ALJ found Dr. Martin's October 17, 2019, medical opinion was unpersuasive. (Tr. 66). After summarizing Dr. Martin's October 17, 2019, opinion, the ALJ's discussion of the opinion states, "[t]his set of limitations is apparently based on the functional capacity evaluation conducted in October 2019 by Mr. Dahl. For the same reasons that the functional capacity evaluation is not persuasive, this opinion does[sic] not persuasive." (Tr. 66). This is the entirety of the discussion on Dr. Martin's October 17, 2019, opinion.

Because the ALJ did not find Dr. Martin's October 17, 2019, opinion to be as equally well-supported as any other opinion about the same issue, the ALJ is required here to explain only how the supportability and consistency factors were considered. 20 C.F.R. § 404.1520c(b). On the record now before the Court, the ALJ failed to do so.

In his discussion of Dr. Martin's October 17, 2019, opinion, the ALJ did not address the supportability or consistency factors. (Tr. 65). The ALJ's discussion of Dr. Martin's October 17, 2019, opinion stated only that the opinion was based upon Mr. Dahl's FCE, thus, "[f]or the same reasons that the functional capacity evaluation is not persuasive, this opinion does[sic] not persuasive." (Tr. 66).

The undersigned has already found that the ALJ failed to adequately consider the supportability and consistency factors regarding Mr. Dahl's opinion. Given the ALJ now relies, entirely, on that analysis in finding Dr. Martin's October 17, 2019, opinion unpersuasive, the

16

Court, for the same reasons as already stated above, finds the ALJ did not properly consider the supportability and consistency factors in assessing Dr. Martin's October 17, 2019, opinion.

In sum, the ALJ failed to adequately explain why he found the limitations expressed in Dr. Martin's October 17, 2019, opinion, to be unpersuasive.

The ALJ's failure to explain how both the supportability and consistency factors were evaluated for Mr. Dahl's and Dr. Martin's opinions constitutes legal error that warrants remand. See, Bonnett, 859 F. App'x at 20; see also Lucus, 960 F.3d at 1069–70. Accordingly, the Court recommends that the present case be remanded to the Commissioner so that a determination may be made in a manner consistent with this Report and Recommendation. On remand, the ALJ should evaluate Mr. Dahl's and Dr. Martin's opinions in accordance with 20 C.F.R. § 404.1520c, specifically relating to the supportability and consistency factors.

## V.  CONCLUSION

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1.  Plaintiff's request for relief, [Docket No. 18], be **GRANTED**, as set forth herein;

2.  Defendant's request for relief, [Docket No. 24], be **DENIED**, as set forth herein; and

3.  The above captioned matter be **REMANDED** to the Social Security Administration, pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with this Report and Recommendation.

Dated:  May 21, 2026                          s/Leo I. Brisbois
                                              Hon. Leo I. Brisbois
                                              United States Magistrate Judge

17

## **NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).